IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 7:11-CR-72-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JIMMY PATTERSON, JR., | ) | |
| | ) | |
| Defendant. | ) | |

On July 16, 2020, Jimmy Patterson, Jr. ("Patterson") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 67] and filed a memorandum in support with attachments [D.E. 76]. On August 8, 2020, Patterson requested unredacted transcripts of his sentencing hearing [D.E. 72]. On December 18, 2020, the government responded in opposition to Patterson's motion for release [D.E. 78]. As explained below, the court denies Patterson's motions.

I.

On July 18, 2011, pursuant to a written plea agreement, Patterson pleaded guilty to conspiracy to distribute and possess with the intent to distribute 280 grams or more of cocaine base (crack) (count one), and possession of a firearm in furtherance of a drug trafficking crime (count two). See [D.E. 27, 29]. On February 17, 2012, the court held Patterson's sentencing hearing. See [D.E. 39, 41]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)-(B). The court calculated Patterson's offense level to be 38, his criminal history category to be IV, and his advisory guideline range on count one to be 324 to 405 months' imprisonment. See [D.E. 41, 42]. After granting the government's

downward departure motion and thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Patterson to 138 months' imprisonment on count one, and 60 months' consecutive imprisonment on count two. See [D.E. 41] 2. Patterson did not appeal.

On February 22, 2016, Patterson moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 782. See [D.E. 45]. On July 16, 2018, the court denied Patterson's motion. See [D.E. 47]. Patterson did not appeal.

On January 21, 2020, Patterson moved for credit for time served. See [D.E. 56]. On July 20, 2020, the court denied Patterson's motion. See [D.E. 69]. Patterson did not appeal.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

2

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but

---

> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

As for Patterson's request for compassionate release, Patterson contends that he has exhausted his administrative requirements. On July 29, 2020, Patterson allegedly submitted a request for compassionate release to the BOP. See [D.E. 76] 4. Patterson alleges that the BOP denied his request the same day. See id. Moreover, the government has not invoked section 3582's exhaustion requirement. See [D.E. 78]; United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Patterson's claim on the merits.

Patterson seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Patterson cites the COVID-19 pandemic and his health conditions, including an arachnoid cyst on his brain that causes seizures, nausea, vertigo, hearing and vision loss, and facial pain, his severe allergies, his upper respiratory issues, and his asthma. See [D.E. 67] 8–13; [D.E. 76] 4–12. Patterson also cites the conditions at FCI Fort Dix, his rehabilitation efforts, his release plan, and that he has served over 103 months of his sentence. See [D.E. 67] 8–13; [D.E. 76] 4–12.

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition ... from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). While Patterson states that he has an arachnoid cyst, severe allergies, upper respiratory issues, and asthma, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Patterson serves his sentence. Accordingly, reducing Patterson's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, conditions at FCI Fort Dix, Patterson's health conditions, rehabilitation efforts, and release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Patterson's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Patterson is 44 years old and engaged in very serious criminal behavior between 1989 and April 13, 2011. See PSR [D.E. 30] ¶¶ 7–13. Patterson was a major narcotics trafficker in Maxton, North Carolina, was accountable for 7.1 kilograms of crack cocaine, 25.27 grams of cocaine, and 2.27 kilograms of marijuana, and possessed firearms in connection with his drug trafficking activities. See id. Patterson also is a recidivist with convictions for communicating threats, simple affray, driving while license revoked (six counts), possession with intent to sell and deliver cocaine (two counts), sale and delivery of cocaine (two counts), obtaining a driver's license by fraud, driving

6

while impaired, second degree trespass, and possession with intent to manufacture, sell, and deliver cocaine. See id. ¶¶ 15–22. Patterson also has performed poorly on supervision. See id. ¶ 18. Nonetheless, Patterson has taken some positive steps while incarcerated. See [D.E. 67] 11; [D.E. 76] 11. The court also has considered Patterson's potential exposure to COVID-19, the conditions at FCI Fort Dix, his health conditions, his rehabilitation efforts, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Patterson, the section 3553(a) factors, Patterson's arguments, the government's persuasive response, and the need to punish Patterson for his criminal behavior, to incapacitate Patterson, to promote respect for the law, to deter others, and to protect society, the court declines to grant Patterson's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Patterson's request for home confinement, Patterson apparently seeks relief under the CARES Act. See [D.E. 76] 12. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Patterson's request for home confinement.

As for Patterson's request for unredacted transcripts, Patterson's sentencing hearing transcript does not contain redactions. See [D.E. 52]. Accordingly, the court denies Patterson's request.

7

## II.

In sum, the court DENIES Patterson's motion for compassionate release [D.E. 67] and DISMISSES Patterson's request for home confinement. Furthermore, the court DENIES Patterson's request for unredacted transcripts [D.E. 72].

SO ORDERED. This 19 day of January 2021.

JAMES C. DEVER III
United States District Judge

8